UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELIGHA BILLINGSLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:04-CV-283 |
| | ) | |
| MARK GERARDOT | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

At approximately 4:00 a.m. on November 25, 2002, Defendant, police officer Mark Gerardot ("Officer Gerardot"), responded to a dispatch regarding two suspicious persons in a dark blue car parked near a residence on Fairfield Avenue in Fort Wayne.  Officer Gerardot located the suspicious vehicle (with its door open and personal belongings loaded inside) and, as his squad car approached the vehicle, he noticed a black male leaving the yard at 3811 Arlington Avenue.  Believing a burglary to be in progress, Officer Gerardot gave pursuit and eventually apprehended the plaintiff, Eligha Billingsley ("Billingsley") in the immediate area.  In the course of the apprehension and arrest Officer Gerardot sprayed Billingsley with pepper-spray.   Billingsley believes this act constituted excessive force and that Officer Gerardot arrested him without probable cause.  Thus, he brought this suit, *pro se*, claiming the actions of the defendant violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

Presently before the court is Officer Gerardot's, Motion for Summary Judgment filed on

1

January 18, 2005. After being properly advised in the spirit of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982) and *Timms v. Frank,* 953 F.2d 281, 285 (7th Cir. 1992) of his obligation to respond, Billingsley chose not to respond.

For the reasons that follow, the defendants' motion will be GRANTED.

## **FACTUAL BACKGROUND**

Before delving into the factual background in detail, it is noteworthy that Billingsley has not offered any response to Defendant's motion for summary judgment in spite of receiving a *Lewis v. Faulkner* notice. As a result, the facts herein are excerpted from Defendant's "Statement of Material Facts" submitted as part of his Motion for Summary Judgment. *See* N.D.Ind.L.R. 56.1 ("In determining the motion for summary judgment, the court will assume that the fact[s] as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion..."). The court shall recite Billingsley's deposition testimony where it differs from the factual recitation offered by Officer Gerardot since it was submitted by Defendant as part of the documentary material supporting his motion for summary judgment. With this in mind, the court turns now to the relevant facts:

As set forth above, Officer Gerardot responded to a police dispatch reporting two suspicious individuals in a dark blue car parked at the rear of 3810 Fairfield Avenue in Fort Wayne, Indiana. When he arrived on the scene in his fully marked squad car, Officer Gerardot located a dark blue Oldsmobile with its door open and personal belongings loaded into the car. As he approached the vehicle in his squad car, a black male ran from the yard at 3811 Arlington Avenue west across the alley and continued westbound over a fence onto Fairfield Avenue. Officer Gerardot radioed ahead

2

to Sergeant Jon Bonar and informed him that a subject was running in the area.

Officer Gerardot then exited his vehicle to engage in a foot pursuit of the suspect. During the pursuit, Officer Gerardot called out "Stop, Police," but the subject continued to run. Officer Gerardot lost sight of the subject on the east side of Fairfield Avenue in between French Avenue and West Rudisill Boulevard. Thereafter, Officer Gerardot began walking down the north side of the 400 block of West Rudisill Boulevard and observed a male subject wearing dark clothing and glasses between the houses in the 400 block of French and West Rudisill. The male subject made eye contact with Officer Gerardot, stopped momentarily, and then ran in the opposite direction towards French Avenue where Officer Gerardot again lost sight of him.

Thereafter, Officer Gerardot began looking in the snow for footprints and discovered shoe prints in the snow on the south side of French Avenue. He followed those footprints to a dark color pickup truck parked in the driveway of 417 French Avenue. In the bed of the parked truck, Officer Gerardot found a man he contends was Billingsley lying facedown against the side of the truck bed.

Upon finding Billingsley in the back of the truck bed, he ordered Billingsley to show his hands. Billingsley made no attempt to move from his position or show his hands as ordered by Officer Gerardot. In response, Officer Gerardot sprayed a short burst of pepper spray towards Billingsley and repeated the command to show his hands and get out of the truck. According to Gerardot, Billingsley stood up, fell sideways out of the truck onto the ground. Officer Gerardot then placed his knee on Billingsley's back and handcuffed him. After informing dispatch of the apprehension, Officer Gerardot kept Billingsley in custody until other officers arrived on the scene to assist in transporting Billingsley to the Fort Wayne Police Station.

At first glance, the above factual allegations are largely undisputed. *See Amended*

*Complaint,* ¶¶s 6-13. Billingsley, however, testified in his deposition to a different account, an account contrary to that which he pled in his Amended Complaint. According to Billingsley, the relevant facts are as follows: in the early morning hours of November 25, he received an electronic page from a friend named Harris requesting that Billingsley pick him up and take him home. In response to that page, Billingsley drove to Arlington Street and began driving around in search of Harris. Unable to locate his friend, Billingsley parked his vehicle in the area of French or Arlington Street and exited the vehicle. Billingsley testified that he left the vehicle running and walked across the street to look for addresses because he was lost. As he was walking down the street, Billingsley heard police sirens but did not see police officers or hear any police officers command him to "stop" prior to his arrest. Within five (5) minutes of exiting his vehicle, Billingsley claims he was grabbed by Officer Gerardot, and handcuffed while standing up. Billingsley attempted to turn around while Officer Gerardot was handcuffing him and claims that Officer Gerardot sprayed him in the face with pepper spray, "slammed" him to the ground and held him there with his foot until other officers arrived.

Billingsley eventually pled guilty to a burglary charge and Harris was likewise convicted of burglary by a jury. Billingsley is presently serving a six year prison sentence. Billingsley suffered no physical injuries as a result of this encounter.

## Summary Judgment Standards

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a

motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### **Claim under 42 U.S.C. § 1983**

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811 (1994). To prevail on a claim under section 1983, plaintiff must therefore show "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996); *see also, Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980).

Plaintiff claims that Gerardot arrested him without probable cause and that in doing so he used excessive force. In the motion for summary judgment, Defendant asserts that Gerardot's use of force was reasonable and, in any event, the reasonableness of his conduct is evidenced by the lack of significant injury (or any injury for that matter) to Billingsley. In addition, Gerardot contends that he is entitled to prevail on both claims under the doctrine of qualified immunity.

**i. Unlawful Arrest**

Billingsley claims that he was arrested without probable cause. If so, the arrest violated the plaintiff's Fourth Amendment rights. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Sandul v. Larion,* 119 F.3d 1250, 1256 (6th Cir.1997) (a "police officer is permitted to make an arrest if there is probable cause to believe that the arrestee has committed or is committing an offense."). Whether there is probable cause for an arrest depends on whether there are sufficient "facts and circumstances within the officer's knowledge" to warrant a prudent officer to believe that the suspect had committed or was about to commit an offense. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Beck,* 379 U.S. at 90, 85 S.Ct. 223.  This is so, even if the officer was mistaken about some of the facts on which he relied. *Id.*   Even in such circumstances, the officer will be entitled to qualified immunity where, evaluated from the perspective of a reasonable, competent officer, such "reasonable officer could have believed" that his conduct was lawful "in light of clearly established law and the information the ... officer[ ] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In this case, given the facts and circumstances within Officer Gerardot's knowledge, it is clear that probable cause for an arrest existed.  As will be reiterated throughout this opinion, Officer Gerardot responded to a dispatch in the early morning hours  to investigate a suspicious persons/vehicle call in the area of Arlington Street.  When he arrived in a fully marked squad car he located the suspicious vehicle parked outside a residence, noted personal contents loaded inside and saw a male black  running in an alley near the area.  After losing sight of the individual, he came across Billingsley, a man fitting the description of the person he had observed running from the scene, walking in the immediate area.  These facts would certainly permit a reasonable officer to

6

believe that Billingsley had committed or was in the process of committing a crime and evading arrest.  Thus, because probable cause existed for the arrest, there is no Fourth Amendment violation and, in turn, no violation of 42 U.S.C. §1983 based on the absence of probable cause.

### ii.  Excessive Force

Turning now to Billingsley's claim of excessive force, such "excessive force allegations must be assessed within the context of the Due Process Clause," *Dorsey v. St. Joseph County Jail*, 98 F.3d 1257, 1258 (7th Cir. 1996), and are analyzed under a reasonableness standard.  The United States Court of Appeals for the Seventh Circuit has overviewed this standard as follows:

> '[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'...The reasonableness standard cannot be defined precisely, nor should it be applied in a mechanical fashion....'Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at state.'...Due to the fact specific nature of the inquiry, the determination whether a police officer utilized excessive force depends on the totality of the circumstances surrounding the encounter....We must pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'...  In addition, the reasonableness inquiry is an objective one: The 'particular force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'... '[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997)(internal citations omitted).

7

Although the court is without the benefit of argument to support Billingsley's position, the court can assume that Billingsley would contend that factual disputes exist as to the extent of force used and the order in which the force was employed. Generally speaking, it would not be unreasonable for the officer (or officers) to have restrained an individual who was a suspect in a burglary and, as Officer Gerardot claims, was taking evasive action from police. Nor would it appear unreasonable to pepper spray a suspect who was noncompliant with an officer's requests to step out of a vehicle. Here, assuming as the court must at summary judgment, Billingsley's version of the events leading to the application of pepper spray, the real question, is whether it is objectively reasonable for an officer to utilize pepper spray[1] after, as Billingsley claimed in his deposition, he was handcuffed. On this point, the court concludes that under the facts of this case, the use of pepper spray was objectively reasonable and did not constitute excessive force.

As noted above, Officer Gerardot clearly had probable cause to believe that Billingsley committed or was in the process of committing a burglary. From Officer Gerardot's vantage point, at approximately 4:00 a.m., he responded to a suspicious persons/suspicious vehicle call. When he arrived on the scene, he discovered a vehicle parked outside a residence with no occupants inside but with the door open and personal belongings loaded inside the car. He then observed a subject running from the immediate area and taking evasive action from him. Thereafter, assuming Billingsley's deposition account to be true, Officer Gerardot saw Billingsley walking in the immediate area where he had lost sight of the fleeing subject.[2] Given these facts, a reasonable

---

[1] Interestingly, Billingsley does not claim that being "slammed" to the ground as he described in his deposition is excessive force. His Amended Complaint challenges solely the use of pepper spray.

[2] Of course, if Officer Gerardot's testimony was credited there could be no doubt that either the arrest was legal or that the force used during the execution of the arrest was reasonable.

officer on the scene could have easily concluded that a burglary was ongoing and Billingsley was involved. Thus, to accost a suspected burglar and handcuff him is not unreasonable.

Nor does the court conclude that the small application of pepper spray applied by Officer Gerardot was *per se* unreasonable, even after Billingsley was handcuffed. Officer Gerardot had witnessed a subject taking evasive action from him and while Billingsley claims to be merely walking in the area, he admits that once he was being handcuffed he turned around to confront whoever was behind him.[3] Officer Gerardot certainly could have viewed this action as a further attempt to resist and evade police and thus, the short burst of pepper spray was intended to temporarily disable Billingsley until backup officers arrived. In the court's estimation, this is reasonable application of pepper spray especially given the uncertainties of the situation and the fact that Officer Gerardot did not know whether Billingsley was armed and/or whether he intended to engage in a physical struggle. See *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir.2002)("[P]epper spray is a very reasonable alternative to escalating a physical struggle with an arrestee."); see also *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997)(use of pepper spray on heavy individual was not excessive force even if that individual was not physically or verbally abusive); *Singleton v. City of Newburg*, 1 F. Supp.2d 306, 315 (S.D.N.Y. 1998)(collecting cases finding use of pepper spray reasonable); *Griffin v. City of Clanton*, 932 F. Supp. 1359, 1369 (M.D. Ala. 1996)("as a means of imposing force, pepper spray is generally of limited intrusiveness" and it is "designed to disable the suspect without causing permanent physical injury").

Indeed, from Officer Gerardot's viewpoint, Billingsley had already attempted to evade police

---

[3]Billingsley testified in his deposition that he was unaware that a police officer had grabbed him and that he believed Officer Gerardot was one of his friends playing a prank on him. As a result, when he turned around, he claims it was only to identify who had grabbed him.

once and thus, it would not be unreasonable for him to believe Billingsley planned further resistance even when handcuffed.  This evidence, even assuming the facts favorably to Billingsley, supports the single conclusion that the amount of force employed by Officer Gerardot was commensurate with the risk he faced.  Thus, this court will not, in hindsight, second guess this judgment call on the part of the officer.   Accordingly,  the court concludes, as a matter of law,  that no violation of the Fourth Amendment occurred.

This said, the court also notes that , "plaintiff has submitted no evidence to suggest that [he] was injured by the pepper spray, in any way." *Singleton, supra* 1 F. Supp.2d at 315 (finding no injury and collecting cases suggesting that absence of injury fatal to excessive force claim).  Indeed, the existence or absence of physical injury is clearly relevant to the determination whether the use or display of force is constitutionally excessive. See *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 471 fn. 3 (7th Cir.  1997) (stating that an excessive force claim does not require an injury, but that the lack of injury supports the claim that no excessive force was applied); *Gumz v. Morrissette*, 772 F.2d 1395, 1401 (7th Cir.1985) (noting that "the presence of some physical evidence is certainly relevant" to the determination whether the use of force was constitutionally excessive), overruled on other grounds by *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987); *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir. 1999) (stating that while significant injury needn't be shown, a plaintiff asserting an excessive force claim must  have suffered at least some form of injury).  Here, the record reflects no injury at all to Billingsley as a result of the police tactics employed during his arrest.  Indeed, Billingsley did not seek medical attention after his arrest and reported no injuries during his arrest.  Rather, Billingsley stated only that he felt some stinging in his eyes for a few hours post-arrest.  This confirms this court's conclusion that no excessive force

was employed during the course of Billingsley's arrest.

**Qualified Immunity**

Even if the court determined that Officer Gerardot's actions in this case could be found to be objectively unreasonable, he is still entitled to qualified immunity because reasonable persons in his position could have believed that his conduct was lawful.

Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court held in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that resolution of claims of qualified immunity involves two steps. First, the court must determine whether the facts alleged suffice to show a constitutional violation. *See Greene v. Barber,* 310 F.3d 889, 894 (6th Cir.2002) (citing *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). If, viewing the facts most favorably for the plaintiff, he can prove no violation of any of his constitutional rights, no further inquiry concerning qualified immunity is required. *Id.* If a jury could find that the plaintiff's constitutional rights were violated, the next step is to determine whether the right was clearly established. *Id.* In making this determination, " '[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Id.* (quoting *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151). If so--if the constitutional right was clearly established, the defendant cannot maintain the defense of qualified immunity.

No doubt, as a general proposition, excessive force in effectuating an arrest violates the Constitution. However, plaintiff argues, and the court has not found any  cases which present

closely analogous facts which would suggest that defendants acted or failed to act as required by the Constitution.  Indeed, as pointed out previously, the only viable claim is against Gerardot is for restraining plaintiff and for the pepper spraying of plaintiff.  However, as has also been pointed out, cases hold that such conduct is reasonable in certain circumstances and this Court finds the actions objectively reasonable in this case.  Clearly Gerardot is entitled to qualified immunity which, after all, is an "accommodation for reasonable error...because officials should not err always on the side of caution because they fear being sued."  *Hunter v. Bryant*, 112 S.Ct. 534, 537 (1991).

## Conclusion

On the basis of the foregoing, the Motion for Summary Judgment filed by Gerardot is GRANTED.  The Clerk is hereby directed to enter judgment in favor of the defendant and against the plaintiff.

SO ORDERED.  This 12th day of April 2005

s/ William C. Lee
United States District Court
Northern District of Indiana